

# IN THE CIRCUIT COURT OF DAVIDSON COUNTY, TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| ALEXIA HUMPHREY, | ) |
| Plaintiff, | ) |
| | ) DOCKET #: 12C3480 |
| v. | ) JURY DEMAND (12) |
| | ) |
| MEHARRY MEDICAL COLLEGE, | ) |
| Defendant. | ) |

## COMPLAINT

Comes now the Plaintiff, Alexia Humphrey, by and through her undersigned counsel, and for her Complaint against Defendant, Meharry Medical College, the Plaintiff states as follows:

1. The Plaintiff, Alexia Humphrey, (hereinafter "Plaintiff") is a resident of Hermitage, Davidson County, Tennessee.

2. The Defendant, Meharry Medical College, (hereinafter "Meharry Medical") is a domestic corporation authorized to be and doing business in Nashville, Davidson County, Tennessee, where the allegations set forth in this complaint occurred.

3. Jurisdiction in this matter is proper because the events giving rise to this matter took place in Davidson County, Tennessee, at 1005 D. B. Todd Blvd., Nashville, Tennessee.

4. The Plaintiff was hired by the Defendant on August 17, 2009.

5. From February, 2010 through July 31, 2012, the Plaintiff was subjected to unequal pay, race and national origin discrimination, sex/gender discrimination and

1 | Page

retaliation.

6. The Defendant had knowledge of unequal pay, race and national origin discrimination, and sex/gender discrimination in violation of Tennessee Human Rights Act, 42 U.S.C. §1981, The Equal Pay Act and Tennessee Law.

## FACTUAL BACKGROUND

7. The Plaintiff was hired by the Defendant on August 17, 2009 as a bilingual Patient Service Representative (PSR).

8. The Plaintiff is a Hispanic female from Uruguay.

9. The Plaintiff applied for citizenship in the United States of America and completed that process during her employment with the Defendant.

10. Since the beginning of the Plaintiff's employment, she performed her job to the best of her ability.

11. The Plaintiff was subjected to derogatory comments about her race, ethnicity, alienage, ancestry and national origin during her employment.

12. The Plaintiff was treated differently than non-Hispanic American employees and was required to perform additional duties.

13. The Hispanic workers were not allowed to communicate amongst themselves in Spanish.

14. Plaintiff's co-workers and members in management ridiculed and demeaned Hispanic patients in front of Plaintiff.

15. The Plaintiff brought in candy from her native country. She was asked by Joan Campbell, an employee of the Defendant, "is the candy was as illegal as you are?"

16. Another worker said that Hispanic people stunk.

Copy

17. The Defendant imposed additional requirements on the Plaintiff and treated her less favorably than other non-Hispanic employees.

18. In addition to her PSR duties, Plaintiff was frequently asked to interpret for the physicians and patients.

19. Plaintiff was not hired as an interpreter and did not receive any training from the Defendant prior to being asked to perform interpretation services.

20. Plaintiff expressed her concerns about being placed in these highly sensitive and privacy protected situations as an interpreter without that title or training, but her concerns were dismissed.

21. When the Plaintiff inquired about Meharry's need for interpretation services in addition to a bilingual PSR, Rhonda Hamms, an employee of the Defendant, told Plaintiff that she was the property of Meharry and do to as she was told.

22. Additionally, Plaintiff was paid less than her male PSR co-worker who was not bilingual and did not provide any interpretation services.

23. From August 17, 2009 until the time that the Plaintiff was forced to resign, she was the only person on her floor that could interpret for the patients.

24. Plaintiff requested her pay be raised, and/or corrected since she performed equal work to her male counterpart and also provided interpretation services, but her request was denied.

25. Plaintiff also reported experiencing and witnessing increased discrimination and hostility from Meharry employees towards Hispanic persons while being asked to interpret.

26. Plaintiff asked to be excused from interpretation services for a variety of

reasons, including but not limited to the discrimination and harassment she was having to witness, and the fact that she was not hired, trained, or paid to provide interpretation services.

27. Tanisha Jones, a clinic manager and employee of the Defendant, threatened to fire the Plaintiff if she did not interpret for medical appointments.

28. After reporting harassment, discrimination and unequal treatment to the Defendant, to no avail, the Plaintiff reported the same to the Equal Employment Opportunity Commission.

29. Subsequently, the Plaintiff was subjected to a hostile work environment and was written up for situations that other co-workers were not written up for at any time.

30. Numerous times during the course of the Plaintiff's employment, the Plaintiff notified the Defendant, both at the local and corporate level that she wanted to remain employed, but also that she was experiencing and witnessing discrimination and harassment which she wanted to stop.

31. After being written up, Plaintiff was suspended on or about July 25, 2012, by the Defendant.

32. Plaintiff's work environment became increasing hostile from the first time she complained of unequal and discriminating treatment in February of 2010 and progressed to the point that she could no longer tolerate the working conditions and on or about July 31, 2012, Plaintiff resigned from a hostile working environment.

33. By July 31, 2012, the Plaintiff's working conditions were so intolerable that a reasonable person would feel compelled to resign.

34. Plaintiff was constructively discharged by the Defendant.

## COUNT I
## VIOLATIONS OF THE EQUAL PAY ACT

35. Allegations 1-34 are hereby incorporated herewith.

36. During her period of employment with the Defendant, Plaintiff was employed as a bilingual patient services representative.

37. From 2009 until January 31, 2012, the Defendant qualified as an "employer" as defined under 29 U.S.C. §206(d).

38. From 2009 until January 31, 2012, the Plaintiff qualified as an "employee" and was paid "wages" as defined under 29 U.S.C. §206(d).

39. During February, 2010, the Plaintiff was paid an hourly rate of $12.20, which was less than the wages provided to her male counterpart patient services representative.

40. Since February, 2010, the Plaintiff has consistently been paid a lower base rate than her male counterpart.[1]

41. At all times during her employment with Defendant, Plaintiff has performed work equal in skill, effort, and responsibility and under similar working conditions to the work of a comparable male PSR employee, who was paid a higher hourly rate. This constitutes a violation of 29 U.S.C. § 206(d).

42. If Plaintiff had been paid a wage equal to that of the male employees who performed equal work, Plaintiff would have been paid at a base rate of not less than $13.80 per hour during February, 2010 forward.

43. Upon discovery of the disparity in wages, the Plaintiff worked diligently

---

[1] The Union negotiated an increase for bilingual employees for the 2012 year, but Plaintiff's base pay remained unequal to her male counterpart, who was not bilingual.



to correct this inequity by reporting the same to her supervisors and human resource personnel, but to no avail as the Defendant refused to correct the disparity.

44. The Plaintiff and her male comparator were hired within months of each other and the Defendant knew or should have know of the pay disparity during their respective hiring periods in the late, 2009 and early 2010.

45. In February, 2010, the Plaintiff discovered the pay inequity and reported it immediately to her supervisors and human resource department.

46. Therefore, as of at least February, 2010, the Defendant had knowledge of the pay violations and intentionally and recklessly disregarded the information provided and continued to pay male PSR at a higher rate than Plaintiff, a female PSR, for equal work as defined by 29 U.S.C. §206(d).

47. As a result of the Defendant's violations, the Plaintiff seeks unpaid wages and compensation, liquidated damages and attorney fees and punitive damages.

## COUNT II
## RACE, NATIONAL ORIGIN, ALIENAGE, AND ANCESTRY DISCRIMINATION

48. Allegations 1-34 are hereby incorporated herewith. In the alternative, the Plaintiff asserts that the Defendants retaliated and discriminated against her because of her race, national origin, alienage and ancestry in violation of Tennessee Code Annotated § 4-21-401(a)(1) and 42 U.S.C. § 1981.

49. Beginning on or about August, 2009 and continuing through her constructive discharge on July 31, 2012, the Plaintiff was subjected to harassment and discrimination by the Defendant's employees and agents. Plaintiff avers this discrimination was due to Plaintiff's alienage, ancestry, national origin and race.

6 | Page

Case 3:12-cv-00977   Document 1-1   Filed 09/21/12   Page 6 of 15 PageID #: 10

Copy

50. The Plaintiff is originally from Uruguay and recently became a citizen of the United States of America.

51. Plaintiff's primary language is Spanish, but she is also fluent in English as well. She does have an accent to her speech.

52. The Plaintiff's supervisors and management consisted of non-Hispanic Americans.

53. Employees and agents of the Defendant emphasized Plaintiff's citizenship and ethnic or foreign characteristics.

54. On numerous occasions employees and agents of the Defendant made comments regarding Hispanics, non-Americans and characteristics of Hispanic people; such as its people being unclean and uneducated.

55. When Plaintiff received her United States citizenship in January of 2012, an employee or agent of the Defendant said something to the effect that the Plaintiff was "finally legal."

56. Despite the Defendant's prejudices and assumptions, Plaintiff was legally working and living in the United States during her application for citizenship.

57. The Plaintiff avers that she was not treated the same as other similarly situated American non-Hispanic co-workers.

58. The Plaintiff asserts that she was treated poorly and received disparate treatment as compared to American employees who were similarly situated.

59. At all times pertinent to this action, Plaintiff was a "person" within the meaning of Tennessee Code Annotated § 4-21-102(14).

60. At all times pertinent to this action, Defendant was an "employer" within

Copy

the meaning of Tennessee Code Annotated § 4-21-102(4).

61. The Plaintiff asserts that the Defendant violated 42 U.S.C. § 1981, and constructively discharged the Plaintiff based upon her alienage, ancestry, and/or race.

62. The Plaintiff asserts that there is a causal connection between the Defendant's poor treatment, disparate treatment, discrimination and termination and the Plaintiff's alienage, ancestry and/or ethnicity and race.

63. The Plaintiff would aver that the Defendant's reasons for his termination were pre-textual and that further, the Plaintiff was terminated based upon her alienage, ancestry, race, and/or national origin.

64. At all relevant dates and times as set forth herein, it is averred that:

(a) The Plaintiff is a member of a protected class, being of Uruguay origin, ancestry, ethnicity and citizenship, who went through the steps and obtained her citizenship in the United States in January of 2012.

(b) The Defendant intended to discriminate against the Plaintiff on the basis of her national origin, alienage, race, ancestry, and ethnicity;

(c) The discrimination interfered with the Plaintiff's rights;

(d) The Defendant disciplined, suspended and constructively discharged the Plaintiff; and

(e) The Plaintiff's alienage, national origin, ethnicity, ancestry or race was a motivating factor in the Defendant's decision to terminate the Plaintiff.

65. Plaintiff submits the Defendant's employees and agents engaged in intentional discrimination and acted with malice or reckless indifference to the Plaintiff's federally protected rights.

Copy

66. The Plaintiff asserts that she was treated poorly and received disparate treatment as compared to non-Hispanic American employees who were similarly situated. Plaintiff was paid lower than her Caucasian, American male counterpart, was asked to perform more job duties and work than her Caucasian American male counterpart and subsequently received discipline such as warnings and suspension.

67. The Plaintiff's formal complaints to management and human resources regarding the Defendant's discrimination and harassment were not taken seriously by the Defendant.

68. Additionally, the Defendant failed to apply policies consistently between the Plaintiff and other similarly situated non-Hispanic American co-workers. The Plaintiff avers that non-Hispanic, American employees received higher pay for less responsibility than Hispanic, non-American employees.

69. The Plaintiff asserts that there is a causal connection between the Defendant's poor treatment, disparate treatment, discrimination and termination and the Plaintiff's race, national origin, alienage and/or ancestry.

70. The Plaintiff would aver that the Defendant's reason for her adverse employment actions were pre-textual and further, the Plaintiff was forced to resign due to the intolerable hostile work environment the Defendant created and fostered.

71. By failing to pay Plaintiff equally, placing higher work responsibilities on Plaintiff, disciplining Plaintiff, suspending Plaintiff and causing the end of Plaintiff's employment, the Defendant discriminated against Plaintiff with respect to her terms, conditions, and privileges of employment because of or on the basis of race and national origin, alienage and ancestry in violation of Tennessee Code Annotated § 4-21-401(a)(1)

Copy

and 42 U.S.C. § 1981.

## COUNT III
## SEX/GENDER DISCRIMINATION

72. Allegations 1-34 are hereby incorporated herewith. In the alternative, the Plaintiff asserts that the Defendant retaliated and discriminated against her because of her sex/gender.

73. At all relevant dates and times as set forth herein, the Plaintiff was an employee of the Defendant.

74. At all times pertinent to this action, Plaintiff was a "person" or "employee" within the meaning of Tennessee Code Annotated § 4-21-102(14).

75. At all times pertinent to this action, Defendant was an "employer" within the meaning of Tennessee Code Annotated § 4-21-102(4).

76. At the time of the Plaintiff's termination the Plaintiff was one of two regular PSR's that worked in the pediatric department at Meharry.

77. During her employment with Defendant, her male co-worker was paid more for performing fewer services.

78. Male employees were treated more favorably than the Plaintiff and the Defendant is liable for discrimination perpetrated by their employees and/or agents.

79. At said dates and times, members of management employed by the Defendant participated in discrimination and took no action to stop the discrimination.

80. At all relevant times as set forth herein, Plaintiff was treated differently because of her sex and underwent discrimination from the Plaintiff's supervisor and management which affected the terms, conditions, and/or privileges of the Plaintiff's

Copy

employment with the Defendant.

81. At all relevant times as set forth herein, the Plaintiff avers the following:

(a) the Plaintiff was a member of a protected class;

(b) the Plaintiff was treated differently because of her sex;

(c) the Defendant's discrimination of the Plaintiff was based on her sex;

(d) the Defendant's discrimination of the Plaintiff affected a term, condition and/or privilege of the Plaintiff's employment;

(e) the Defendant's sexual discrimination of the Plaintiff unreasonably interfered with the plaintiff's ability to work;

(f) the Defendant's sexual discrimination of the Plaintiff caused her physical or mental well being to be seriously affected;

(g) the Defendant failed to take prompt and appropriate corrective action to eliminate the discrimination.

(h) The Defendant disciplined, suspended and constructively discharged the Plaintiff because of her sex.

82. The sexual discrimination perpetrated by the employees and agents of the Defendant violates the Tennessee Human Rights Act.

83. By failing to treat Plaintiff similarly to her male counterparts and by taking adverse employment action against the Plaintiff, the Defendant discriminated against Plaintiff with respect to her terms, conditions, and privileges of employment because of or on the basis of sex, in violation of Tennessee Code Annotated § 4-21-401(1).

84. At all relevant dates and times as forth herein, the Defendant are

Copy

vicariously liable for the actions and inappropriate conduct of its employees, agents and/or representatives because: (a) the Defendant did not exercise reasonable care to promptly correct and prevent the discriminating behavior; (b) the Defendant did not properly supervise and train the Plaintiff's supervisors regarding appropriate behavior towards employees of all gender; (c) the Defendant did not properly train the Plaintiff's supervisors regarding the Defendant's policies towards a workplace free of sex or gender and; (d) the Defendant did not have a viable and reasonable procedure and policy in effect to encourage and promote employees to report gender discrimination occurring within the Defendant's workplace.

85. The Plaintiff's managers and supervisors discriminated against Plaintiff as a result of her sex/gender by refusing to pay Plaintiff equally to her male counterpart and correct her wages, by discussing Plaintiff's charge of discrimination filed with the Equal Employment Opportunity Commission with her male counterpart, and then by disciplining the Plaintiff, and forcing her resignation. Male employees were treated more favorably. The management team's actions show that the Defendant had not properly trained the managers and supervisors or provided proper instructions to prevent discrimination against the Plaintiff for her sex/gender.

86. The Plaintiff would aver that the Defendant's reason for her adverse employment actions were pre-textual and further, the Plaintiff was forced to resign due to the intolerable hostile work environment the Defendant created and fostered.

## COUNT IV
## RETALIATION (TENNESSEE HUMAN RIGHTS ACT)

87. Plaintiff re-alleges and incorporates herein the allegations contained in paragraphs 1 through 34 above.

Copy

88. At all times pertinent to this action, Plaintiff was a "person" within the meaning of Tennessee Code Annotated § 4-21-102(14).

89. At all times pertinent to this action, Defendant was an "employer" within the meaning of Tennessee Code Annotated § 4-21-102(4).

90. Beginning on or about the end of February, 2011 and continuing through July 31, 2012, the Plaintiff opposed a practice declared discriminatory by Tennessee Code Annotated §4-21-401(a)(1) and 29 U.S.C. §206(d).

91. The Plaintiff opposed race, national origin and gender/sex and wage discrimination and harassment in the workplace.

92. The Plaintiff reported such discrimination to her employer, including the human resource department on numerous occasions.

93. The Plaintiff also subsequently reported race, national origin, gender/sex and wage discrimination to the Equal Employment Opportunity Commission on or about November 1, 2011.

94. The Plaintiff continued to reported discrimination and also retaliation to the Defendant to no avail.

95. Thereafter, and in violation of Tennessee Code Annotated §4-21-301 and 29 U.S.C. §206(d), the Plaintiff was further discriminated against and retaliated against by the Defendant.

96. The Plaintiff filed an additional charge of discrimination against the Defendant with the Equal Employment Opportunity Commission on January 26, 2012.

97. The Plaintiff asserts that after opposing unlawful activity, she was treated poorly and was retaliated against by a variety a measures, including but not limited to: the

Defendant sharing confidential information with her male counterpart, verbal harassment and intimidation techniques, verbal and written warnings, suspension and ultimately constructive discharge.

98. The Plaintiff asserts that there is a causal connection between the Defendant's retaliatory treatment and termination and the Plaintiff's engagement in practices declared discriminatory by Tennessee Code Annotated §4-21-401(a)(1) and 29 U.S.C. §206(d).

99. The Plaintiff would aver that the Defendant's reason for her disciplinary warnings and suspension were pre-textual and further, the Plaintiff was forced to resign in retaliation for engaging in protected activity and due to the intolerable hostile work environment the Defendant created and fostered.

100. By disciplining, suspending and forcing Plaintiff's resignation, the Defendant retaliated and discriminated against Plaintiff with respect to her terms, conditions, and privileges of employment because of or on the basis of Plaintiff's opposition to a practice declared discriminatory by Tennessee Code Annotated § 4-21-401(a)(1) and 29 U.S.C. §206(d).

## APPLICABLE TO ALL COUNTS

101. As a result of the Defendant's culpable acts or omissions as set forth herein, the Plaintiff was improperly discriminated against and terminated by the Defendant and is entitled to compensation for past, present and future wages and benefits, incidental damages, compensation for emotional distress, humiliation, mental anguish, embarrassment, pain and suffering and other nonpecuniary losses.

14 | Page

Case 3:12-cv-00977 Document 1-1 Filed 09/21/12 Page 14 of 15 PageID #: 18



102. Plaintiff further submits that the Defendant has acted: (a) intentionally, (b) maliciously, or (c) recklessly in terminating the Plaintiff and that the Plaintiff is entitled to an award of punitive damages.

WHEREFORE PLAINTIFF PRAYS:

a) That service of process issue to Defendant as set forth herein;

b) Back pay and front pay;

c) Pre-judgment interest;

d) Applicable and available compensatory and punitive damages to be awarded by the Trier of fact;

e) Liquidated damages;

f) Reasonable attorney's fees and costs; and

g) Other such relief as the Court deems just and equitable

h) That a jury of twelve (12) be empanelled to try this action.


Respectfully submitted,

*Nina Parsley*
Nina H. Parsley [BPR No. 23818]
MICHAEL D. PONCE & ASSOCIATES
1000 Jackson Road, Suite 225
Goodlettsville, TN 37072
Attorney for Plaintiff
(615) 851-1776 phone
(615) 859-7033 fax